NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOVASEPTUM AB, NOVASEPTIC AB, : & NOVASEPTIC AMERICA, INC. : | **Hon. Dennis M. Cavanaugh** |
| : | |
| Plaintiff, : | **OPINION** |
| vs. : | |
| : | Civil Action No.05-CV-5175 (DMC)(JAD) |
| AMESIL. INC. : | |
| : | |
| Defendant. : | |
| : | |
| : | |
| : | |
| : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon motion by NovaSeptum AB, NovAseptic AB, and NovAseptic America, Inc. (collectively "NovaSeptum") to substitute in their place Millipore AB and Millipore Corporation (collectively "Millipore") pursuant to Fed. R. Civ. P. 25.  NovaSeptum also moves to reopen the case to enforce the Consent Order and for a finding of contempt against W.L. Gore & Associates ("Gore").  Oral argument was heard on December 21, 2010 at 9:00 a.m.  After considering the submissions of all parties and the oral argument, it is the decision of this Court for the reasons herein expressed that NovaSeptum's motion to substitute Millipore is **granted**, and NovaSeptum's motion for contempt is **denied**.

I.      Background[1]

On February 28, 2007, this Court entered a Consent Order between Plaintiffs

_____

[1] These facts have been taken from the parties' respective submissions.

NovaSeptum AB, NovAseptic AB, and NovAseptic America, Inc. (collectively "NovaSeptum")

and Defendant Amesil, Inc. ("Amesil"), and relating to NovaSeptum's Patent No. 6,779,575

("575 Patent") for a "Sealing Appliance." The original action and Consent Order concern Claim

1 of the '575 Patent, which was owned by NovaSeptum.  Of particular importance to the instant

motion are Paragraphs 8, 9, and 12 of the Consent Order.  Paragraph 8 provides, in relevant part,

that "Amesil and its... successors-in-interest... are hereby permanently restrained and enjoined,

for the life of the Patent-in-Suit, from making, having made, using, selling, offering to sell or

importing... the ACP-9000 or the Re-designed Crimping Cutter,... or any substantially similar

functional imitations of the 'jaw' components of the foregoing." Paragraph 9 provides, in

relevant part, that the "Amesil 'anvil-type' crimper tool device... and any device that is

substantially similar to the 'anvil-type' crimper, does not and will not constitute infringement of

any claims of the '575 Patent or any reissue thereof."  Paragraph 12 provides, in relevant part,

"this Court retains jurisdiction over the parties for the purpose of enforcing the Agreement

between the parties... and any action relating to the enforcement of this Order."

    NovAseptic America, Inc. merged with Millipore Corporation on March 30, 2006, and

Millipore Corporation was the surviving entity.  NovAseptic AB and NovaSeptum AB were

dissolved and merged into Millipore Arktiebolag ("Millipore AB") on December 29, 2006.

Millipore Corporation and Millipore AB (collectively "Millipore") are the successors-in-interest

to NovAseptic America, Inc., and NovAseptic AB and NovaSeptum, respectively.  The merger

occurred prior to entry of the Consent Order, but the Consent Order refers to NovaSeptum and

there was no substitution of parties at that time.  However, the initial Rule 7.1 disclosure filed

with the original complaint states "1) NovaSeptum AB and NovAseptic America are subsidiaries

of NovAseptic AB, and 2) Millipore (US) owns 100% of Millipore Investment Holdings

Corporation (Dutch company), which owns 100% of the shares of NovAseptic AB." Plaintiff

asserts that Millipore was involved in the settlement negotiations, and that reference to

NovaSeptum and Millipore are interchangeable because they became the same entity due to the

merger.  On February 9, 2007, Millipore filed papers with the U.S. Patent and Trademark Office

stating that NovaSeptum AB and NovAseptic AB had conveyed the '575 Patent to Millipore.

The nature of the conveyance is listed as 'merger,' and the effective date is listed as December

29, 2006.

On February 28, 2007, the same day the Consent Order was entered, Gore publicly

announced its acquisition of Amesil.  Although Gore publicly referred to the transaction as an

acquisition, the legal transaction was actually an asset purchase wherein Gore acquired certain

assets, such as intellectual property, technology, and equipment from Amesil.  The Asset

Purchase Agreement was entered on February 2, 2007 and the closing date was February 28,

2007.  The Asset Purchase Agreement provided that Amesil would retain any liabilities or

obligations related to the settlement with NovaSeptum; Gore asserts that it did not acquire legal

liabilities relating to the crimping tool litigation.  The only crimping tool asset Gore purchased

from Amesil was an 'anvil-type' crimping device, which Gore maintains was approved in

Paragraph 9 of the Consent Order.   NovaSeptum was apparently unaware of this asset purchase

agreement prior to the Consent Order.

Several months after the asset purchase, Gore modified the crimping tool it purchased

from Amesil.  Gore's goal was to "preserve the two-step [crimping] process but incorporate the

ability to perform both steps in a single device."  Gore attached a cutting blade to a stainless steel

lever, and then attached the lever to the 'anvil-type' crimping tool.  Gore asserts that the modified

device maintained the two-step process of the approved device with crimping and cutting

occurring in two separate steps.  The modified device was manufactured and sold under the

product number ACS-9073.  Gore now sells a similar device under product numbers GS00020

and GS00021.

A reissue of the '575 Patent was issued on March 30, 2010 as U.S. Reissue No. 41,169.

Claim 1 of the reissued patent ("Patent-in-Suit") is in identical form to the original patent.

On April 2, 2010, Millipore provided Gore with a copy of the Consent Order along with a

letter requesting Gore cease all sales of the Crimp and Cut Tools, remove the products from its

website, provide an accounting of sales, and provide Millipore with a sample of the product.

Gore provided Millipore with a sample of the Crimp and Cut Tools with product numbers ACS-

9073 and GS00020.  Gore informed Millipore it has sold both products, but currently only sells

GS00020.  Gore refused to cease sales or remove the products from its website.  Millipore

subsequently filed this motion to substitute Millipore for NovaSeptum, to reopen the case to

enforce the consent judgment, and for contempt against Gore.

## II.      Discussion

A. Motion for Substitution

Fed. R. Civ. P. 25(c) provides: "If an interest is transferred, the action may be continued

by or against the original party unless the court, on motion, orders the transferee to be substituted

in the action or joined with the original party."

As discussed above, Millipore Corporation and NovAseptic America, Inc. merged, and

Millipore Corporation is the surviving entity.  NovaSeptum AB and NovAseptic AB dissolved,

and merged into Millipore AB.  Therefore, pursuant to Fed. R. Civ. P. 25 , Millipore Corporation

and Millipore AB are hereby substituted for NovAseptic America, Inc. and NovaSeptum AB and

NovAseptic AB respectively as Plaintiffs in this action.[2]

---

[2] Gore challenges whether Millipore has standing to enforce the Consent Order because the Consent Order does not specifically address the rights of NovaSeptum's successors-in-interest within the "four corners" of the Order.  In support of its position, Gore relies on Thatcher v. Kohl's Department Stores, Inc., 397 F.3d 1370 (Fed. Cir. 2005).  In Thatcher, the Consent Judgment enjoined the defendant and its successors-in-interest, but did not expressly extend the right of enforcement to anyone other than the plaintiff.  Id. at 1372-73.  Later, the plaintiff sold his rights to the patent to a third party, who subsequently tried to enforce the consent judgment. Id.  Since the consent judgment did not expressly permit a party to assign its rights to enforce the injunction, the Federal Circuit declined to allow the third party to enforce it.  Id. at 1375.

However, in Thatcher, the Federal Circuit stated that "interpretation of a settlement agreement is not an issue unique to patent law, even if arising in the context of a patent infringement suit," and then applied "the law of the appropriate regional circuit."  Id. at 1373. Additionally, even if Thatcher was binding on this Court, Thatcher is factually distinct from the instant case.  In Thatcher, the plaintiff *assigned* his rights to a third party.  Here, there was no assignment.  The ownership interest in the Patent-in-Suit was transferred from NovaSeptum to Millipore via a merger; NovaSeptum is now Millipore.  See e.g. Prof'l Buyer's Guild v. Ace Fire Underwriters Ins. Co., 2007 WL 3227183 (D.N.J. Oct. 29, 2007)(finding in case where agreement prohibited an assignment, the successor had standing because transfer of rights via a merger does not constitute an assignment); N.J.S.A. 14A:10-6 (providing that the surviving corporation in a merger succeeds to the rights and privileges of both corporations, and all property belonging to each corporation is vested in the surviving corporation).  Accordingly, this Court finds that Millipore has standing to enforce the Consent Order.

B. Motion to Reopen the Case and for a Finding of Contempt

      1. Whether the Consent Order is Valid[3]

Fed. R. Civ. P. 65(d) provides that "every order granting an injunction... shall be specific

in terms [and] shall describe in reasonable detail--and not by referring to the complaint or other

document--the act or acts restrained or required."  Therefore, Rule 65(d) requires specificity in

describing the enjoined acts in order for the injunction to be valid.  Injunctions are "binding only

---

[3]Gore also challenges the validity of the Consent Order on two additional grounds, and both arguments are unavailing.  First, Gore argues that this Court lacked subject matter jurisdiction to enter the Consent Order because NovaSeptum lacked standing prior to the entry of the Order.  Only a patent owner has standing to sue for patent infringement.  See 35 U.S.C. § 281; Mars, Inc. v. JCM American Corp., 2008 WL 5401604, *2-3 (D.N.J. Dec. 23, 2008).  Gore argues that NovaSeptum was no longer the patent owner at the time of the Consent Order because it had transferred its ownership interest in the Patent-in-Suit to Millipore in December 2006.  However, a review of the document filed with the U.S. Patent & Trademark Office shows that the conveyance was recorded as a "merger," not an assignment.  Since NovaSeptum and Millipore merged, a reference to one is a reference to the other.

      Second, Gore argues that the Consent Order does not apply to the reissued patent because it is not specifically named within the "four corners" of the Consent Order.  See Thatcher v. Kohl's Dep't Stores, Inc., 397 F.3d 1370 (Fed. Cir. 2005).  The reissue proceedings were commenced prior to the entry of the Consent Order, and are briefly mentioned in Paragraph 6 of the Consent Order, but only in the context of prohibiting Amesil from participating or intervening in the proceedings.  The Consent Order does not address the effect of a reissue on the injunction.  However, the effect of reissue of patents is governed by 35 U.S.C. § 252, which provides:

> "The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in *so far as the claims of the original and reissued patents are substantially identical*, such surrender shall *not affect any action then pending nor abate any cause of action then existing*, and the reissued patent, to the extent that its claims are substantially identical with the original patent, *shall constitute a continuation thereof and have effect continuously from the date of the original patent*."

35 U.S.C. § 252 (emphasis added).  Since Claim 1 is substantially identical, the reissue patent is a continuation of the '575 Patent and has effect continuously from the date of the original patent.  Therefore, the reissue has no effect on the Consent Order.

to the extent they contain sufficient description of the prohibited or mandated acts." Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir.1971). "Broad, nonspecific language that merely enjoins a party to obey the law or comply with an agreement, however, does not give the restrained party fair notice of what conduct will risk contempt." Louis W. Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir.1994). Courts, including the Third Circuit, have found injunctions that describe enjoined acts solely by reference to another document to be invalid and such references to prevent a contempt finding. See e.g. id.; Ace American Ins. Co. v. Wachovia Ins. Agency, 2009 WL 424328, *2-3 (D.N.J. Feb. 18, 2009)(same).

Gore relies on Ace American Ins. Co. to support its position that the Consent Order violates the "other document rule" of Rule 65(d) because it makes references to exhibits to the settlement agreements, which were not attached to the Consent Order, and therefore is invalid. However, Gore overstates the district court's ruling in Ace American Ins. Co. as standing for the proposition that *any* reference to another document violates Rule 65(d). In Ace American Ins. Co., the enjoined acts were described strictly by reference to another document, and therefore did not provide sufficient detail or notice as to the conduct proscribed. As Millipore correctly points out, the Consent Order at issue here does not describe the enjoined acts solely by reference to another document. Although the Consent Order does reference exhibits attached to the settlement agreement, it also specifically names the enjoined product ("ACP-9000") and any substantially similar product ("any substantially similar functional imitations of the 'jaw' components" thereof), and therefore describes the enjoined acts in reasonable details. Since the Consent Order describes the proscribed acts with sufficient specificity and in reasonable detail, this Court finds the Consent Order is valid.

2.   Whether Gore is Bound by the Consent Order as a Successor in Interest

"As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." Additive Controls & Measurement Sys. v. Flowdata, Inc., 154 F.3d 1345, 1351 (Fed. Cir. 1998).  "[T]he extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d)."[4] Id. at 1355.  If non-parties "'either abet the defendant, or [are] legally identified with him'" they may be held in contempt. Id. at 1351 (internal citations omitted).  "[T]he effect of an injunction on non-parties 'depends on an appraisal of [their] relations and behavior [with the enjoined party] and not upon mere construction of terms of the order." Id. (citing Regal Knitwear Co. v. NLRB, 324 U.S. 9, 15 (1945)).  Successors in interest to the original defendant may be bound by an injunction because an "injunction may be enforced 'against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons.'" Id. (citing Walling v. James V. Reuter, Inc., 321 U.S. 671, 674 (1944)).  Successorship liability turns on "whether there is 'substantial continuity of identity' between the two organizations" and "the 'substantial continuity of identity' test has been adopted as a general expression of the degree of closeness that Rule 65(d) requires for a non-party successor to be subject to the injunction." Id. at 1355

---

[4]Fed. R. Civ. P. 65(d), provides in relevant part:
 (2) Persons Bound. The order binds only the following who receive actual notice
 of it by personal service or otherwise:
         (A) the parties;
         (B) the parties' officers, agents, servants, employees, and attorneys; and
         (C) other persons who are in active concert or participation with anyone
 described in Rule 65(d)(2)(A) or (B).

(internal citations omitted).

Millipore argues that based on the "substantial continuity of identity" test, Gore should be bound by the injunction as a successor in interest.  In support of its argument, Millipore points to the press release announcing Gore's acquisition of Amesil,[5] a combined Gore and Amesil product portfolio, similarities between Amesil's past advertisements and Gore's current advertisements, three patent application assignments that assign the applications from Amesil to Gore as a result of the acquisition, the fact that Gore has taken over Amesil's web address, and the fact that Gore has continued to employ Amesil employees, including two vice-presidents. Additionally, Millipore argues that Gore must have been aware of the Consent Order because it announced its acquisition of Amesil on the very day the Order was entered.  Furthermore, Millipore argues that the timing of Gore's asset purchase of Amesil combined with the fact that Amesil retained liability related to the patent litigation while Gore was free to make and use the technology at issue, demonstrates that Gore and Amesil worked together to evade the effects of the Consent Order.[6]

Gore argues that they are not bound by the injunction.  Gore's first argument is that it is not a successor in interest.  As discussed above, Gore states that while it referred to the transaction with Amesil externally as an acquisition, the transaction was actually an asset

---

[5]According to Millipore, the announcement is still on Gore's website.  The announcement includes the following statements: Gore announced it acquired Amesil; Gore will continue to manufacture and sell Amesil products; there is a significant synergy between Gore and Amesil; Gore is in the process of finalizing long-term integration plans; and Gore will continue to manufacture Amesil's products in Oak Ridge, New Jersey (where Amesil was located).

[6]In Millipore's initial filing, Millipore conceded that Gore was not created to evade the Consent Order.  However, in Millipore's Reply to Gore's Opposition, Millipore changed its position.

purchase wherein Amesil retained all liabilities relating to the NovaSeptum litigation.  Gore also

states that the only crimping tool it purchased from Amesil was the anvil-type crimper that was

approved in the Consent Order. Even assuming it is a successor in interest, Gore's second

argument is that Rule 65 does not explicitly include successors in interest, and therefore Gore can

only be found within the scope of the injunction if they are "instrumentalities through which [an

enjoined party] seeks to evade an order or ... come within the description of persons in active

concert or participation with [an enjoined party] in violation of an injunction." <u>Regal Knitwear</u>,

324 U.S. 9, 14 (1945).[7]  Gore contends that Millipore offered no clear and convincing evidence

demonstrating that Gore is an instrumentality through which Amesil is evading the Consent

Order or a person in active concert or participation with Amesil in violating the injunction.

This Court finds Millipore's arguments regarding the substantial continuity of identity

between Amesil and Gore to be persuasive.  Regardless of whether it was for the purpose of

evading the Consent Order or for other reasons, business relating to the Patent-in-Suit was

transferred from Amesil to Gore.  Therefore, this Court finds that Gore is bound by the Consent

Order as a successor in interest to Amesil.

3.  Whether Contempt Proceedings Against Gore are Appropriate

The "[p]rocess of contempt is a severe remedy, and should not be resorted to where there

is fair ground of doubt as to the wrongfulness of the defendant's conduct." <u>California Artificial

Stone Paving Co. v. Molitor</u>, 113 U.S. 609 (1885); <u>see</u> <u>also</u> <u>Preemption Devices, Inc. V.</u>

---

[7] It is worth nothing that the Supreme Court also stated that it "cannot say that 'successors and assigns' ... may not under some circumstances be among those reached by the order within the scope of Rule 65 and hence cannot say that it is not a permissible provision." <u>Regal Knitwear</u>, 324 U.S. at 14.

Minnesota Mining & Mfg. Co., 803 F.2d 1170 (Fed. Cir. 1986).  In a contempt proceeding, "the

movant has the heavy burden of proving violation of the District Court's order by clear and

convincing evidence."  Id. at 1173 (internal citations omitted).  "Ambiguities must be resolved in

favor of the party charged with contempt." F.T.C. v. Lane Labs, 624 F.3d 575, 582 (3d Cir.

2010).  "If there is a fair ground of doubt as to the wrongfulness of the defendant's actions said to

be in contempt, the District Court should not entertain the civil contempt proceeding or find

contempt."  Preemption Devices, Inc. at 1173 (internal citations omitted); see also Robin Woods

Inc. v. Woods, 28 F.3d 396, 399 (3d Cir.1994).

When the accused device was not subject of the original litigation, courts have

"exercis[ed] restraint in affording the patent owner the benefit of contempt proceedings."  KSM

Fastening Systems, Inc. V. H.A. Jones Company, Inc., 776 F.2d 1522, 1525 (Fed. Cir. 1985). In

order to determine whether the enjoined party should be found in contempt for the accused

device, this Court must undertake a two-part inquiry.  Id. at 1532; see also Abbott Laboratories v.

TorPharm, Inc., 503 F.3d 1372, 1380 (Fed. Cir. 2007).

First, this Court must determine "whether a contempt hearing is an appropriate forum for

adjudging whether an allegedly redesigned product is infringing."  Id.; see also KSM Fastening

Sys., 776 F.2d at 1532.  To do this, this Court "must compare the accused product with the

original infringing product" to determine "if there is more than a colorable difference between

the accused product and the adjudged infringing product."  Abbott Laboratories, 503 F.3d at

1380.  Contempt proceedings are appropriate if the alteration is "'merely colorable' and

obviously was made for the purpose of evading the [Consent Order] without essential change in

the nature of the device."  KSM Fastening Sys., 776 F.2d at 1531.  However, contempt

proceedings are not appropriate if there is more than a colorable difference, and there exists

"substantial open issues with respect to infringement to be tried." Id. at 1532.  When "substantial

issues need to be litigated, particularly if expert and other testimony subject to cross-examination

would be helpful or necessary," there is a fair ground for doubt that the decree has been violated.

KSM Fastening, 776 F.2d at 1531, 1532.

       Second, if this Court determines contempt proceedings are appropriate, it must then

"address whether the accused product infringes the claims of the asserted patent." Abbott

Laboratories, 503 F.3d at 1380.  To determine "whether an injunction against infringement has

been violated, requires, at a minimum, a finding that the accused device is an infringement."

KSM Fastening, 776 F.2d at 1532. "To show infringement, the patentee must prove by clear and

convincing evidence that the modified device falls within the admitted or adjudicated scope of

the claims." Abbott Laboratories, 503 F.3d at 1381 (internal citations omitted).

       Counsel for both Millipore and Gore conducted demonstrations of the devices during oral

argument.  Moreover, counsel left samples of the devices so that this Court could perform its

own demonstration of the devices.  At the outset, this Court notes that the accused devices have a

third lever, and that the cutting means does not appear to project from the jaw unless this lever is

depressed.  However, these differences in appearance are not dispositive, and, it is unclear

whether or not the alterations essentially change the nature of the device or its function.  Despite

the various demonstrations, this Court cannot determine, on its own, whether or not the

differences between the enjoined and accused devices are more than colorable.  This Court finds

that further proceedings, likely involving expert testimony, are necessary to make such a

determination.  Therefore, substantial open issues exist that create a fair ground of doubt as to

whether the Consent Order was violated.  Accordingly, summary proceedings such as these are

not appropriate.  Since this Court finds that contempt proceedings are not appropriate, this Court

need not reach the issue of infringement at this time.

### III.  Conclusion

For the reasons stated above, NovaSeptum's motion to substitute Millipore for

NovaSeptum is granted, and NovaSeptum's motion for a finding of contempt is denied.


   S/Dennis M. Cavanaugh   

Dennis M. Cavanaugh, U.S.D.J.


Date:           December 29   ,  2010
Orig.:          Clerk
cc:             All Counsel of Record
                Hon. Joseph A. Dickson, U.S.M.J.
                File